## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

ANDREA J. MOSBY MEACHEM,

     Plaintiff,

v.                             Case No. 2:14-cv-02156-JTF-dkv

MEMPHIS LIGHT, GAS AND WATER DIVISION,    **Jury Demanded**
a division of the City of Memphis, Tennessee,

     Defendant.

_____

### PLAINTIFF'S SECOND AMENDED COMPLAINT
_____

Comes now Plaintiff Andrea J. Mosby Meachem and brings this action against Defendant Memphis Light, Gas and Water Division for violating her rights under the Americans with Disabilities Amendments Act of 2008 ("ADA-AA"), as codified and amended at 42 U.S.C. § 12101 et seq., and for violating her rights under the Tennessee Human Rights Act ("THRA"), as codified at T.C.A. §§ 4-21-101 et seq.  In support, Plaintiff would state as follows:

### I. JURISDICTION

1.      This Court has jurisdiction to hear Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### II. STATEMENT OF FACTS

2.      Plaintiff Andrea J. Mosby Meachem is an adult citizen of the State of Tennessee, residing in Shelby County, Tennessee.

1

3.     Defendant Memphis Light, Gas and Water Division, a division of the City of Memphis, Tennessee.

4.     Plaintiff was hired to work as a staff attorney for Defendant on or about September of 2005.  At all relevant times herein, Plaintiff has been employed by Defendant, who continuously employs more than fifteen (15) employees.  Therefore, Plaintiff is an "employee" under the ADA-AA as the term is defined at 42 U.S.C. § 12111(4) and Defendant is an "employer" under the ADA-AA as the term is defined at 42 U.S.C. § 12111(5)(A).

5.     At all relevant times herein, Plaintiff has been qualified to perform her duties as a staff attorney for Defendant.  Further, at all relevant times herein, Plaintiff has performed her duties in a professional, diligent and competent manner.

6.     As a staff attorney, Plaintiff is primarily responsible for managing outside counsel, providing legal advice to MLGW employees, and negotiating settlements.  In the course of her duties, Plaintiff occasionally has to attend depositions or hearing, but has great flexibility in scheduling such matters.

7.     Plaintiff became pregnant in 2012.  Due to Plaintiff having a significant gynecological medical condition affecting her reproductive system, Plaintiff's pregnancy was particularly high risk.

8.     In early January of 2013, Plaintiff was hospitalized because of her medical condition, which placed Plaintiff's health and the health of her unborn child at risk.  Accordingly, at this time Plaintiff was rendered actually disabled under the ADA-AA.  42 U.S.C. § 12101(1).

9.     While hospitalized, Plaintiff, pursuant to her rights under the ADA-AA, requested that she be able to work from the hospital.  Initially, Plaintiff's supervisor, Cheryl Patterson,

2

Defendant's Vice President and General Counsel, seemed agreeable and advised Plaintiff to provide Defendant with supporting documentation from her physician.  Thus, while Plaintiff was hospitalized, she continued to perform work and she maintained contact with Defendant's outside counsel and her staff to ensure that she was fulfilling her job duties.

10.     To comply with Ms. Patterson's request, Plaintiff submitted the required paperwork from her treating physician on or about January 9, 2013.  The medical documentation provided that although Plaintiff needed to be on bed rest during the remainder of her pregnancy, she was both physically and mentally able to work.  In response, Defendant denied Plaintiff's request to work from the hospital and/or from home because Defendant did not allow telecommuting.

11.     As a result, Plaintiff was forced to remind Defendant that the ADA-AA requires that each request for a reasonable accommodation be reviewed and considered on an individualized basis and that an employer must engage in the interactive process with the employee.  Defendant then agreed to do what the law requires, i.e., engage in an interactive process to determine whether a reasonable accommodation could be accomplished without creating an undue hardship on its business operations.

12.     When the parties finally discussed Plaintiff's request for a reasonable accommodation, i.e., to be able to work from home while on bed rest, Plaintiff initially informed Defendant HR staff, as well as Ms. Patterson, that she was able to perform all of the essential functions of her job of staff attorney with remote access to her computer and access to her electronic case files.  Importantly, Plaintiff already had remote access to Defendant's network.  Therefore, there was nothing that needed to be done to satisfy that accommodation.  Also, from her first day in the hospital until she received Defendant's denial letter, Plaintiff had continued to

work from home and to maintain contact with Defendant's outside counsel and her staff to ensure maximum protection of Defendant's interests. Notably, Plaintiff continued to work in light of the fact that Defendant had not formally instructed her not to work and despite the fact that Defendant was still docking her sick leave while she worked.

13.     On or about February 1, 2013, Defendant informed Plaintiff that her request for a reasonable accommodation was denied. Critically, Defendant's denial was based on inaccurate facts/information that are false and which do not rise to the level of an undue hardship as required by the ADA-AA.

14.     Defendant's first basis for the denial (according to Ms. Patterson and HR staff) was that Plaintiff's physical presence was required at all depositions, pre-trial hearings, and all other phases of litigation. This is simply not true.  Despite vague language in Defendant's Attorney III job description, Defendant's in-house counsel primary responsibility is to manage litigation. Defendant's attorneys, including Plaintiff, do not litigate. During all of her years with MLGW, Plaintiff has consistently utilized the services of outside counsel to litigate on Defendant's behalf.  All of Defendant's in-house attorneys, including Ms. Patterson, assign litigation to outside counsel. When the time comes for depositions, pre-trial hearings, and all other litigation events, outside counsel is already engaged and very active in the process. As the only attorney to manage litigation for workers' compensation and labor and employment cases, Plaintiff often has cases in various phases of litigation at the same time. When scheduling conflicts occur, she must choose which cases to physically attend while she telephonically communicates with outside counsel on the other cases. This has always been her practice and she was never been questioned by Defendant. Further, Defendant has never even insinuated that this practice was harmful to Defendant.  Moreover, before this matter arose, Plaintiff was never

4

advised that her physical presence was required at each aspect of litigation on each case. Thus, it is patently untrue that Plaintiff's physical presence is required at every litigation event for the cases to be effectively managed.  And even assuming that it was necessary that Plaintiff be physically present at every litigation event, this function is only a minuscule aspect of her job. There are often weeks/months that go by when Plaintiff does not have any pre-trial hearings, depositions, or meetings with witnesses.  Further, during the time period in question, there were no trials or hearings scheduled that Plaintiff could not cover.  Additionally, when Plaintiff suffered a work-related back injury in 2012, she worked from home without any push back or resistance from MLGW.  While the ADA-AA requires that employees be able to perform the essential job functions of the job, the infrequent and sporadic nature of in-person appearances, as well as her past work from home for an extended period, calls into question the "essential" nature of this job function.

15.    Defendant also contended that Plaintiff is on the call out list and must be available for call out emergencies. But in all of her years with Defendant, Plaintiff has never actually had to go on a call out.  Thus, Defendant cannot credibly claim this is an essential function of her job because it is belied by the actual historical facts.

16.    The next explanation for failing to accommodate Plaintiff that was offered by Ms. Patterson was that telecommuting would be an inconvenience for Plaintiff's colleagues and her outside counsel.  But under the ADA-AA, an inconvenience does not legally rise to the level of an undue hardship. Put another way, an employer cannot deny an accommodation simply because it may be inconvenient or cause hurt feelings to others. Moreover, in Plaintiff's years with Defendant, Plaintiff has frequently worked with her outside counsel while she was not physically present in the office. The nature of her job requires that she is on call during

vacations, while out on sick leave, or while attending to other MLGW business. Her physical presence or lack thereof does not impact her ability to communicate with outside counsel. And with respect to her colleagues, other than her direct reports, Plaintiff has not and does not require any assistance from her peers in performing her essential job functions. Plaintiff maintained contact with her staff during her entire disability and her staff can confirm that her physical presence is not required nor is it an inconvenience. Ironically, any inconvenience to her colleagues or outside counsel derives from Plaintiff's denying her request to work from home.

17.     An additional explanation offered by Ms. Patterson is that it would be an inconvenience to have support staff copy and bring files to Plaintiff, but Defendant is believed to have later dropped this reason as a basis for denying Plaintiff's request to work from home.

18.     Finally, the last reason provided by Ms. Patterson was that permitting Plaintiff to work from home would compromise the confidentiality of Defendant's legal files. Yet, it is common knowledge that Defendant's attorneys take files home virtually every day and there has never been a mention of a confidentiality concern before Plaintiff's request. Indeed, Defendant's outside counsel often take MLGW files home and they have never instructed them to refrain from this practice.  An attorney's work is going to require that files be taken home. Accordingly, there is nothing in Defendant's past practice, or in any internal policy, that prevents an attorney from taking a file home.

19.     Accordingly, at all relevant times, Plaintiff would have been able to perform all of the essential functions of her job of staff attorney, with remote access to her computer and access to her files.   Indeed, Defendant would not have needed to do anything else to satisfy accommodating Plaintiff's disability.   Despite these facts, Defendant unreasonably and unlawfully failed to accommodate Plaintiff's reasonable requests to work from home.

20.     Plaintiff's son was born on April 14, 2013.   Following her maternity leave, Plaintiff returned to work on July 8, 2013.

21.     Plaintiff filed her original complaint in Tennessee state court on December 30, 2013.  Defendant subsequently removed the case to federal court on March 5, 2014.

22.     On or about April of 2014, following the commencement of Plaintiff's litigation against Defendant, Plaintiff received her performance review for the following period: January 1, 2013 to December 31, 2013.  While the overall rating was 3, and purported to meet her job requirements, the appraisal report prepared by Plaintiff's supervisor, Cheryl Patterson, was negative and critical of Plaintiff in several particularly meaningful regards.  First, the review stated without any factual basis that Plaintiff, "at the risk of being ineffective, however, needs to work on her tone in dealing with clients."  Also, without any factual basis, the review further states:

> Jaye continues to struggle in interacting with some of her internal customers in Human Resources and among management employees in other areas of the company.  While I believe that she has attempted to deal with some of the concerns raised in the past by resorting to only written communication with particular individuals, she would do well to keep the lines of communication open with all of the management employees involved in her matters and to avoid the perception that she is an adversary rather than an advisor.

Additionally, without any factual basis, Plaintiff received 40% ratings for negative media stories and timeliness for response to administrative requests.  Importantly, none of these matters or alleged deficiencies were discussed with Plaintiff at any point during the year by Ms. Patterson.

23.     Following Plaintiff's performance review, in an effort to internally discuss her review, Plaintiff requested that Defendant provide her with written specifics supporting Defendant's negative criticisms of Plaintiff's performance, yet Defendant wholly ignored

Plaintiff's request.

24.     Defendant's 2013 performance review, as well as Defendant's failure to discuss the review with Plaintiff to address the multiple inaccuracies, has caused Plaintiff to experience significant anxiety and stress.

25.     Furthermore, since commencing litigation against Defendant, Plaintiff has had various work assignments taken away from her by Ms. Patterson.  These assignments include employment law matters that Plaintiff would handle in the normal course of her work duties for Defendant.  In fact, Plaintiff's ability to handle such matters has never been questioned prior to her lawsuit against Defendant.   Defendant's actions have thus caused Plaintiff's authority, reputation and credibility to be harmed within Defendant's organization.

### III. CAUSES OF ACTION

26.     Plaintiff incorporates the paragraphs above as if specifically set forth herein, and for her causes of action asserts:

### Count 1: ADA-AA Claim for Failure to Accommodate

27.     Under the ADA-AA, a "disability" may take any of the following forms: a physical or mental impairment that substantially limits one or more major life activities (the "actual-disability" prong); a record of such an impairment (the "record-of" prong); or being regarded as having such an impairment (the "regarded-as" prong). 42 U.S.C. § 12102(1).

28.     In September 2008, Congress broadened the definition of "disability" by enacting the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.  In response to a series of U.S. Supreme Court decisions that Congress believed improperly restricted the scope of the ADA, Congress passed legislation with the stated purpose of "reinstating a broad scope of protection to be available under the ADA." Id. § 2(b)(1).  Relevant to this case, Congress sought

to override <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 199 (2002), in which the Supreme Court had adopted a strict construction of the term "disability" and suggested that a temporary impairment could not qualify as a disability under the Act. Congress believed that Toyota set an "inappropriately high level of limitation necessary to obtain coverage under the ADA."  Pub. L. No. 110-325, § 2(b)(5).  Abrogating <u>Toyota</u>, the ADA-AA provides that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." 42 U.S.C. § 12102(4)(A). Further, Congress instructed that the term "substantially limits" be interpreted consistently with the liberalized purposes of the ADAAA.  42 U.S.C. § 12102(4)(B).

29.    Here, Plaintiff alleges her impairment caused her to be actually disabled under the ADA-AA.  This is because she was "substantially limited" due to her impaired reproductive system (requiring her to be on extended bed rest), which the ADA recognizes as one of the "major life activities" whose substantial limitation qualifies as a disability.   42 U.S.C. § 12102(2)(A).    Per the applicable federal regulations governing the ADA-AA, the term "substantially limits" shall be construed broadly in favor of expansive coverage and that the term is "not meant to be a demanding standard."   29 C.F.R. § 1630.2(j)(1)(i) (2013).   These regulations also expressly provide that "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting" for purposes of proving an actual disability.  29 C.F.R. § 1630.2(j)(1)(ix).

30.    The ADA-AA further provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Additionally, the ADA-AA

9

provides that the term "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).

31.     Under the ADA-AA, the term "reasonable accommodation" means "job restructuring, part-time or modified work schedules . . . and other similar accommodations for individuals with disabilities" as defined at 42 U.S.C. § 12112(9).

32.     Here, the Defendant violated Plaintiff's rights under the ADA-AA by not making reasonable accommodations to the known physical limitations of Plaintiff, who was a qualified individual with an actual disability.

33.     Moreover, and as set forth above, Defendant cannot demonstrate that the accommodation sought by Plaintiff would have imposed an undue hardship on the operation of the business of Defendant.

34.      A copy of Plaintiff's Right to Sue letter regarding her ADA-AA claim is attached as Exhibit A.

### Count 2: THRA Claim for Pregnancy Discrimination

35.     Pregnancy discrimination is unlawful per the THRA.  T.C.A. §§ 4-21-101 et seq. Here, Defendant unlawfully discriminated against Plaintiff on the basis of pregnancy by failing to accommodate Plaintiff's pregnancy although Defendant has and will permit non-pregnant employees (including Plaintiff herself) to work from home for non-pregnancy related medical conditions.  Further, Defendant permits other employees, who are not pregnant nor ill, to work from home.

10

## Count 3: Retaliation Under the ADA-AA

36.     Retaliation is unlawful under the ADA-AA.  Here, as set forth above, Defendant has unlawfully retaliated against Plaintiff for asserting her federally protected rights under the ADA-AA. Indeed, Defendant's actions, as set forth above, in whole or in part, are the type of actions that would dissuade a reasonable employee from making or filing a charge of discrimination.

## Count 4: Retaliation Under the THRA

37.     Retaliation is unlawful under the THRA.  Here, as set forth above, Defendant has unlawfully retaliated against Plaintiff for asserting her protected rights under the THRA Indeed, Defendant's actions, as set forth above, in whole or in part, are the type of actions that would dissuade a reasonable employee from making or filing a charge of discrimination.

## III. DAMAGES

38.     As a direct result of Defendant's unlawful actions, Plaintiff has suffered non-economic harm in the form of emotional distress, humiliation and embarrassment.  Additionally, as a direct result of Defendant's unlawful actions, Plaintiff has suffered economic harm in the form of lost wages and benefits.  For example, regarding loss of benefits, Plaintiff was required to use paid time off and deplete her sick leave and vacation leave while she was on bed rest. Plaintiff would not have been required to use this time had Defendant not failed to accommodate her reasonable request to work from home.  Also, Plaintiff was not able to accrue sick leave and vacation leave while she was prohibited from working by Defendant.

## IV. RELIEF REQUESTED

WHEREFORE, Plaintiff prays that the Court cause service to be issued upon Defendant.

11

Plaintiff further demands a jury to hear this cause, and upon a hearing thereon, prays that the Court:

39.    Award Plaintiff Back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct;

40.    Award Plaintiff compensatory damages against Defendant in an amount to be determined by the jury;

41.    Award Plaintiff all costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees and reasonable attorneys' fees allowed under actions brought pursuant to the ADA-AA and/or THRA; and,

42.    Such further relief as is deemed just and proper.


                              Respectfully submitted,


                              /s/ William B. Ryan
                              William B. Ryan - TN Bar #020269
                              Bryce W. Ashby - TN Bar #026179
                              Janelle C. Osowski – TN Bar #31359

                              DONATI LAW, PLLC
                              1545 Union Avenue
                              Memphis, TN 38104
                              Telephone: 901/278-1004
                              Fax: 901/278-3111
                              Email: billy@donatilaw.com
                                     bryce@donatilaw.com
                                     janelle@donatilaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document has been served via the Court's ECF system on Mr. Saul C. Belz, Mr. Michael Taurer and Ms. Miska Shaw, attorneys for Defendant, Glankler Brown, 6000 Poplar Avenue, Suite 400, Memphis, TN 38119, on June 3, 2014.

<u>/s/ William B. Ryan</u>