**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ANDREA J. MOSBY MEACHEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2:14-cv-02156-JTF-dkv |
| | ) | |
| MEMPHIS LIGHT, GAS & WATER DIVISION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS**

Before the Court is Defendant Memphis Light, Gas & Water's ("MLGW") Motion for Judgment as a Matter of Law and Motion for New Trial, filed September 30, 2015. (ECF No. 99). On October 21, 2015, Plaintiff Andrea Mosby Meachem ("Plaintiff") filed her Response in Opposition, ECF No. 104, to which Defendant filed a Reply on November 2, 2015. (ECF No. 106). After review of the Motion, Response, Reply, and the entire record, MLGW's Motion for Judgment as a Matter of Law and Motion for New Trial are **DENIED**.

Additionally, before the Court is Plaintiff's Motion for Award of Equitable Relief filed on September 30, 2015. (ECF No. 100). MLGW filed a Response in Opposition on October 21, 2015. (ECF No. 103). Plaintiff filed a Reply on November 2, 2015. (ECF No. 107). After a review of the Motion, Response, Reply, and the relevant case law, Plaintiff's Motion for Award of Equitable Relief is **GRANTED**.

## FACTUAL HISTORY

In 2005, Plaintiff was hired by MLGW for an Attorney 3 position[1] within the Department of Legal Services ("Department").  During her tenure, Plaintiff was supervised by MLGW's Vice President and General Counsel, Ms. Cheryl Patterson ("Patterson").  The Department consists of Patterson, as well as four other attorneys.  As an Attorney 3, Plaintiff primarily manages workers' compensation claims, employment issues, and litigation, although Plaintiff has never participated in a trial during her then 8-year tenure.

On January 2, 2013, during the 23rd week of Plaintiff's pregnancy, Plaintiff's doctors discovered a problem requiring Plaintiff's hospitalization.  Previously, Plaintiff suffered through three miscarriages.  On this occasion, Plaintiff underwent surgery on January 3, 2013.  Plaintiff called her supervisor, Patterson, and informed her of the medical complications, which would require bed rest for up to eleven weeks.  At first, Patterson seemed agreeable to allowing Plaintiff

---

[1] The Job Description for the Attorney 3 position lists "essential functions"  as follows:

1. Perform senior level legal assistance to prosecute and defend, in accordance with the Vice President & General Counsel, all suits by or against the Division; and provide analysis and counsel on legal, policy, compliance issues, and actual or anticipated lawsuits.
2. Review and evaluate investigations; based on laws or facts, determine the method of investigation, its extent, legal sufficiency of evidence, applicable laws and the basis and method of settlement.  If settlement is not indicated, determine method of defense at law or equity in the court.
3. Perform legal research on pending cases and current problems.
4. Render legal services and opinions of rights, obligations and privileges for Division employees as requested.
5. Draft, negotiate and prepare contracts and other legal documents; review and approve proposed contracts and legal documents.
6. Negotiate, in accordance with the Vice President & General Counsel, insurance representatives, lawyers, etc. regarding settlements.
7. Interview and take depositions of witnesses; arrange for and conduct pre-trial conferences; and keep Division up to date on new/revised laws, compliance standards and regulations.
8. Represent the Division and try cases in court; and may act as agent of the Division in various transactions.
9. Supervise, direct and train assigned employees such as: paralegals, medical services, support staff, and/or legal students.
10. Perform other duties as directed.

*See generally* (ECF No. 44-11) (providing the full description of the position).

to continue working once MLGW was provided appropriate supporting documentation. However, according to Plaintiff, things changed.

On January 7, 2013, Plaintiff made an official accommodation request to work from bed, either within the hospital or within her home. That same day, the ADA Committee ("Committee"), consisting of Eric Conway, Steve Day, and Rutha Griffin[2], met to discuss Plaintiff's requested accommodation. On January 9, 2013, Dr. Shannon Malone wrote a letter advising MLGW that Plaintiff was on bed rest, and in particular, noted that "[i]t would be ok for [Plaintiff] to work from the hospital or home." (Trial Ex. No. 3). On January 15, 2013, the Committee, along with Patterson and Vernica Davis,[3] held an interactive[4] process meeting with Plaintiff, in which Plaintiff was asked whether she could perform each essential job function. Plaintiff responded in the affirmative for each question asked, reiterating that all work could be done telephonically or through use of a computer. Patterson relayed her concerns that Plaintiff would not be able to perform certain tasks without her being physically present. The Committee denied Plaintiff's accommodation request on January 18, 2013. The crux of the Committee's denial letter of January 30, 2013, stated that (1) physical presence was required and (2) Plaintiff's request elevated concerns of confidentiality. (Trial Ex. No. 8). Plaintiff worked until her accommodation request was denied. Plaintiff later received a denial letter dated January 30, 2013. Plaintiff appealed MLGW's denial on February 2, 2013, via email. MLGW again notified

---

[2] Mr. Conway is the Human Resources Compliance Coordinator; Mr. Day is the Manager of Labor and Employee Relations; and Ms. Griffin is the Manager of Employment Services. (ECF No. 44-1 at 11).

[3] Ms. Davis is the Medical Services Coordinator and nurse for Defendant. *Id.* at 12.

[4] There is evidence in the record that such process was not in fact interactive. *See* (ECF No. 53 at p. 3) ("Mr. Conway told [Plaintiff] that [Defendant's] President, Jerry Collins, directed . . . Patterson to deny [Plaintiff's] request" prior to the interactive process meeting.); *see also* (ECF Nos. 44-13 at p. 10; 53-1 at ¶ 111; 53-19) (noting "No Telecommuting Per Jerry" dated January 3, 2013); (ECF No. 53 at p. 3) (stating that "at no time, did [Defendant] question Dr. Malone's opinion and/or statement regarding [Plaintiff's] ability to work from home. Nor did [Defendant] ever seek clarification, or claim that this note was insufficient." (internal citations omitted)).

Plaintiff of its denial on February 19, 2013, to which Plaintiff again appealed on February 21, 2013.  With Plaintiff able to return to work on April 1, 2013, the accommodation period pertinent to this matter lasted from January 3, 2013, through March 31, 2013.

On February 9, 2013, Dr. Paul Neblett provided an "Attending Physician Statement" advising Plaintiff not to work, which assisted Plaintiff's application for short term disability insurance.  Also, on February 18, 2013, Dr. Neblett authorized a "Certification of Health Care Provider for Employee's Serious Health Condition," noting Plaintiff's inability to drive to work and sit at a desk all day.  This allowed Plaintiff to receive sick leave under FMLA.

Initially, Plaintiff exhausted her sick leave.  Thereafter, she was able to receive short-term disability benefits.  In total, Plaintiff utilized nearly four weeks of sick leave with the remainder covered by the short-term disability benefits.  Plaintiff stated that beginning in January 2013, she was having difficulty concentrating, analyzing information, and making legal decisions.  Dr. John Cooper could not determine whether such symptoms were caused or exacerbated by Plaintiff's "high risk" pregnancy, domestic issues, or MLGW's failure to provide Plaintiff's accommodation.

From February 26, 2013, until the end of the accommodation period, Plaintiff's license to practice law was suspended for failure to pay the annual registration fee.  Normally, the attorney gives the invoice to a billing clerk and MLGW pays the fee.  (*See* Trial Ex. Nos. 24 & 25 & 49). In this instance, however, the invoice was not paid timely.  The suspension was publicized under Plaintiff's name via the Tennessee Bar Association Board of Governors email distribution list and website.  Plaintiff's return to work in April 2013 was fully compensated despite MLGW's awareness of Plaintiff's suspension.  Plaintiff, however, claims that she lacked awareness until

receiving a June 28, 2013 letter from Patterson.   Plaintiff said the suspension was never discussed prior to her receiving notification.

## PROCEDURAL POSTURE

On August 24, 2015, the Court commenced a Jury Trial on the matter.  (ECF No. 83). The Jury returned a verdict on September 1, 2015, awarding damages to the Plaintiff on one claim, and finding in favor of MLGW on the two remaining claims.  (ECF No. 95).  Specifically, the Jury determined that Plaintiff proved the following by a preponderance of the evidence: (1) she was an "otherwise qualified individual" for her job position; (2) MLGW failed to provide her with a reasonable accommodation under the ADA; (3) and MLGW failed to make good faith efforts to identify a reasonable accommodation under the ADA.  (*Id.* at 1-2).  Ultimately, the Jury awarded Plaintiff $92,000.  The Jury found for MLGW regarding the claims for Pregnancy Discrimination and Retaliation.  (*Id.* at 2-3).

After Plaintiff rested her case, MLGW made a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).  (ECF No. 98 at 2).  The Court conducted a hearing, and later denied MLGW's Rule 50(a) motion on September 9, 2015.  *Id.*  Subsequently, MLGW filed the instant motions pursuant to Fed. R. Civ. P. 50(a) and Fed. R. Civ. P. 59.

## STANDARDS OF REVIEW

Fed. R. Civ. P. 50 authorizes the Court to enter judgment as a matter of law against Plaintiff upon finding that a "reasonable jury would not have legally sufficient evidentiary basis to find" for Plaintiff.  "We do not weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for that of the jury."  *Wehr v. Ryan's Family Steak House, Inc.* 49 F.3d 1150, 1152 (6th Cir. 1995).  Applying this rule, courts must view the evidence in the light most favorable to the nonmovant, granting all reasonable inferences in their favor. *Garrison v.*

*Cassens Transport Co.*, 334 F.3d 528, 537 (6th Cir. 2003) (quoting *Phelps v. Yale Sec. Inc.*, 986 F.2d 1020, 1023 (6th Cir.), cert. denied, 510 U.S. 861 (1993). The motion should be granted, "only if reasonable minds could not come to a conclusion other than one favoring the movant." *Garrison*, 334 F.3d at 537-538 (quoting *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171 (6th Cir. 1996)); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from a disinterested witness.").  Moreover, the Sixth Circuit has held, "the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or other results are more reasonable." *J.C. Wyckoff & Associates v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1486 (6th Cir. 1991).

It is within the Court's discretion to grant a Motion under Rule 59 for a new trial. *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). The Sixth Circuit stated the governing principle for Rule 59 Motions:

> The governing principle in the Court's acting on a motion for new trial is whether, in the judgment of the trial judge, such course is required in order to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order a new trial.

*Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.3d 129, 133 (6th Cir. 1990).  A new trial is warranted when a jury has reached a "seriously erroneous result," evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e. the proceedings being influenced by prejudice or bias.  *Holmes v. Vity of Massallion*, 78 F.3d 1041, 1045-45 (6th Cir. 1996).  When ruling on a motion for new trial on the basis the verdict was against the weight of the evidence, "a district judge must compare the opposing proofs and weigh the evidence."  *Duncan v. Duncan*, 377 F.2d

49, 52 (6th Cir. 1967).   However, Courts cannot reweigh the evidence or set aside a jury's verdict, "because the jury could have drawn different inference or conclusions or because judges feel that other results are more reasonable."  *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944).

## ANALYSIS

### A.  Rule 50(a) Motion for Judgement as a Matter of Law

The key inquiry for the Court after viewing the evidence in the light most favorable to the Plaintiff, is whether reasonable minds could only come to a conclusion favoring the Defendant. MLGW asserts that judgment as a matter of law is warranted because the proof at trial failed to establish a legally sufficient evidentiary basis that a reasonable jury could conclude Plaintiff could effectively perform the essential functions of her job while bedridden. Specifically, MLGW claims Plaintiff was not a "qualified individual" because physical presence is required for highly interactive positions and thus an "essential function" of her employment. Moreover, MLGW asserts that extended leave, in this case, qualifies as a reasonable accommodation. Plaintiff contends the proof at trial established she could effectively perform all the essential functions of her job remotely.  In particular, Plaintiff testified she consistently and effectively worked remotely in the past, and the need to be physically present for the purpose of litigation was rare.

To establish a *prima facie* case for failure to accommodate, Plaintiff "must show that: (1) [s]he is disabled within the meaning of the Act; (2) [s]he is otherwise qualified for the position, with or without reasonable accommodation; (3) h[er] employer knew or had reason to know about h[er] disability; (4) [s]he requested an accommodation; and (5) the employer failed to provide the necessary accommodation."  *Melange v. City of Center Line*, 482 F. App'x 81, 84

(6th Cir. 2012) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011)). The parties stipulated that Plaintiff was disabled and MLGW was aware of Plaintiff's disability. (Trial Ex. No. 70).

Once the prima facie case is established, "the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Johnson*, 443 F. App'x at 983. After the employee requests an accommodation, "the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Melange*, 482 F. App'x at 84-85 (citing *Kleiber*, 485 F.3d at 871). Such "'interactive process requires communication and good-faith exploration of possible accommodations.'" *Kleiber*, 485 F.3d at 871 (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000)).

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ." 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . , this description shall be considered evidence of the essential functions of the job."). "[T]he employee bears the burden of showing she can perform the 'essential functions' of the job, with or without accommodation." *Johnson*, 443 F. App'x at 983. Additionally, "the ADA does not require employers to accommodate individuals by shifting an essential job function onto others." *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 729 (6th Cir.

2000).  A job function is essential if its removal would fundamentally alter the position." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (citing 42 U.S.C. § 12111(8)).[5]

"[A]n employee cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation," and whether Defendant's offering was a *reasonable* accommodation is clearly within the purview of the jury. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (citing *Hedrick*, 355 F.3d at 457) ("An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship.'").  As such, whether Defendant's offering was reasonable in light of the circumstances is a question of fact for the jury.

MLGW contends that Plaintiff's own testimony, the written description of Plaintiff's position, and the Sixth Circuit's holding in *Ford* establish Plaintiff was not a 'qualified individual.' According to MLGW, Plaintiff agreed that one of her essential functions was to "[r]epresent the division and try cases in court."  MLGW also had coworkers testify regarding the need to be physically present, especially during 'call-outs when an emergency mandates a physical appearance. However, Plaintiff contends evidence proffered at trial, including testimonies from coworkers, provided the jury with an evidentiary basis to find she could

---

[5] (2) A job function may be considered essential for any of several reasons, including but not limited to the following:
    (i) The function may be essential because the reason the position exists is to perform that function;
    (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
    (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.
(3) Evidence of whether a particular function is essential includes, but is not limited to:
    (i) The employer's judgment as to which functions are essential;
    (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
    (iii) The amount of time spent on the job performing the function;
    (iv) The consequences of not requiring the incumbent to perform the function;
    (v) The terms of a collective bargaining agreement;
    (vi) The work experience of past incumbents in the job; and/or
    (vii) The current work experience of incumbents in similar jobs.
29 C.F.R.. § 1630.2(n).

perform all her essential functions from bed.  Plaintiff relies, *inter alia*, on her coworkers' testimony stating they routinely communicated with her remotely, and that she has never been required to physically appear at a call out.[6]   In addition to coworkers' testimony, Plaintiff presented to the jury two so called "outside" lawyers, Shaun Hunt and Imad Abdullah.  During the time in question both were in private law practice, and were retained to represent MLGW. Both testified that at the time, there was little need for face to face interaction unless a matter proceeded to trial.  The vast majority of their work with Plaintiff was accomplished electronically and remotely.  As in-house counsel, working at home would not have impaired Plaintiff's ability to do her job.

In asserting their position, MLGW heavily relies on the Sixth Circuit's holding in *EEOC v. Ford Motor Company*, 782 F.3d 753 (6th Cir. 2015). In *Ford*, the court granted Summary Judgment to the employer, finding that 'regular and predictably attending work on-site' was an essential function of Plaintiff's employment.  MLGW asserts that the *Ford* holding supports the following propositions: (1) deference should be given to an employer's written job descriptions; (2) opinions of employees regarding their job functions should be afforded little credibility; (3) regular, in-person attendance is all but recognized as a prerequisite for most jobs, especially interactive ones; (4) employers are not required to remove essential functions from a job; (5) the

---

[6] The Defendant argues that the infrequency in which a function is performed does not mean it is not essential, citing *Knutson v. Schwan's Home Service*, 711 F.3d 911 (8th Cir. 2013). In *Knutson*, the Eighth Circuit found that driving was an essential function of the Plaintiff's job duties, despite the fact he had only driven on less than 50 occasions since 2007.  *Id*. The employee had injured his eye, preventing him from getting the certification needed to drive the company truck. *Id*. In finding for the employer, the Court noted that all the other managers were certified to drive, and the ability of the manager to drive was fundamental to the employer's business model. *Id. at* 914-915 ("If managers did not drive trucks, Home Service would deliver less product, affecting sales, and would have to restructure how it trains new drivers.") The holding in *Knutson* is insightful; however, it is not binding on the Sixth Circuit and distinguishable from the facts of the case at bar.

Here, all MLGW managers testified that they regularly communicate and fulfill their duties remotely. Additionally, Plaintiff's ability to appear in Court is not as fundamental to MLGW's business as *Knutson* employee's ability to drive was to his employer. Lastly, the employee in *Knutson*, appeared to be visually impaired indefinitely, while Plaintiff's disability would only last a few months.

use of technology does not abrogate the requirement for physical presence.  Moreover, MLGW asserts *Ford* is factually analogous to this case. This Court disagrees.

*Ford* is factually distinguishable from the case at hand.  In *Ford*, Plaintiff had a long history of poor performance and high absenteeism.  As such, other employees and managers had to cover for her.  Some of the absences were related to Plaintiff's long-term physical disability, irritable bowel syndrome ("IBS").  Ford made several attempts to accommodate Plaintiff, all of which failed.    Plaintiff's poor performance, high absenteeism, and the interactive accommodation process went on for years, ultimately resulting in termination.   Litigation followed.

The distinctions between this case and the facts in *Ford* weaken MLGW's position.  Unlike the plaintiff in *Ford*, the Plaintiff here had no issue with performing her duties remotely, and there was no indication from her employer that her work product declined.  Moreover, her work history indicated that she rarely was required to appear physically.  Absenteeism was not an issue. Based on testimony from her co-workers, it seemed to be a common practice that MLGW employees would communicate telephonically or through other remote means.  Also, the employer in *Ford* made far greater efforts than Defendant to provide reasonable accommodations.  The employee in Ford also requested accommodation that was drastically different than Plaintiffs.  In *Ford,* the employee was seeking to work off-site four days a week indefinitely, while Plaintiff in the instant action was seeking to work remotely for only four months.

While MLGW highlights evidence revealed during the trial, there was evidence presented in trial favoring Plaintiff as well.  MLGW asserts their listed job descriptions are 'essential functions' based on Plaintiff's testimony.  However, according to *Ford*, the Court must also

account for the policies and practices of the employer, while discounting Plaintiff's opinion regarding essential job functions.  Based on the testimony from Plaintiff's coworkers, outside counsel, and her work history, it does not appear unreasonable for the jury to conclude that physical appearance was not an essential function, especially for such a short period of time.  The key distinction between the case at bar and *Ford* is that the employee in *Ford* failed to perform her job duties, but the Plaintiff here had no competency issues.  All of this lends credibility to the Jury's determination that she was a "qualified individual who could perform the essential functions of her job duties."

MLGW filed a Notice of Supplemental Authority in support of its Motion on June 15, 2016.  (ECF No. 108).  On June 6, 2016, the Honorable S. Thomas Anderson, now Chief United States District Judge for the Western District of Tennessee, issued an Order Granting Defendant's Motion for Summary Judgement, 2:15-cv-02150-STA-dkv, ECF No. 61.  MLGW asserts that the subject matter of this Order is directly relevant to its motion.  The Court, in relevant part, stated:

> Here, Plaintiff[']s request for a 'flexible work schedule permitting her to come in late and to take breaks "as needed" and for an undetermined time period would remove an essential function from her job, i.e., punctuality and attendance, and is, therefore, *per se* unreasonable.  Accordingly, Defendant is entitled to summary judgment.

(2:15-cv-02150-STA-dkv, ECF No. 61 at 23).  The Court also found, alternatively, that the plaintiff's excessive absenteeism prevented her from being "qualified" for protection under the ADA.

On March 10, 2017, MLGW filed a Second Notice of Supplemental Authority.  (ECF No. 110).  This notice cited the affirmation of MLGW's previous supplemental authority.  *See Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384 (6th Cir. 2017).  In *Williams*, the Sixth

Circuit held that attendance was an essential job function for Williams as a call center employee.[7]  Williams was required to be physically present at her work station and logged into the computer in order to receive customer service calls.  *Id*. at 387.  If Williams wasn't logged into her workstation, any calls that would have otherwise gone to her would be rerouted to another CSR.  *Id*. at 388.  Additionally, the Court stated that "a person like Williams who reacts to customer calls with anxiety attacks that require her to log off of her workstation is not capable of performing the essential job functions of an AT&T CSR."  *Id*. at 398.

The Court finds that *Williams* is distinguishable from the instant case.  Here, given Plaintiff's work history, the request for a short-term accommodation was not unreasonable, especially since there were no issues of excessive absenteeism or poor performance. Furthermore, because of the evidence produce at trial, it wasn't unreasonable for the Jury to conclude that physical appearance was not an essential function for Plaintiff, and that Plaintiff was a "qualified individual" under the ADA.  As previously stated, the *Ford* decision does not require the Court to give blind deference to the employer, but the Court must take into account the words, policies, and practices of the employer.  *Ford*, 782 F.3d at 755-56.[8]

MLGW also avers its accommodation to Plaintiff was reasonable and imposed a minimal financial impact.  Whether an accommodation is reasonable is a question of fact for the jury. The ADA mandates that an employer's accommodation must actually allow the employee to attain an equal level of achievement, opportunity, and participation.  Employers and employees are instructed to "identify the precise limitations imposed by a disability and explore potential

---

[7] Williams did not put forth competing evidence to refute the testimony of AT&T managers Payne and McArthur that regular attendance is essential to the function of the Memphis Call Center.  *Williams*, 847 F.3d at 392.

[8] *See also Williams*, 847 F.3d at 392 (citing *Ford*, 782 F.3d at 762-63) ("The *Ford* decision leaves open the possibility that regular attendance might not be an essential function of every job, but suggests that exceptions will be relatively rare.").

accommodations that would overcome those limitations." *Melange*, 482 F. App'x at 84-85 (citing *Kleiber*, 485 F.3d at 871). Based on the evidence, a rational trier of fact could find that MLGW's accommodation was unreasonable.

The Court notes that even if all facts are undisputed, a motion for judgment as a matter of law may be denied if the evidence is susceptible of conflicting inferences. After viewing the evidence in the light most favorable to the Plaintiff, and drawing all reasonable inferences that favor Plaintiff, the Court finds that reasonable minds could come to a conclusion favoring Plaintiff. MLGW's reliance on *Ford* falters because it is factually distinguishable from the case at bar, and determining 'essential functions' is ultimately a factual determination. Therefore, MLGW's Motion for Judgment as a Matter of Law is **DENIED**.

### B.  Rule 59 Motion for New Trial

The central issue in ruling on a Rule 59 Motion is whether the Jury verdict was against the weight of the evidence to such an extent that led to a "seriously erroneous result." MLGW reasserts its claim that the Jury had no evidentiary basis to find that Plaintiff could perform the 'essential functions' of her job duties. Additionally, MLGW claims its proof was limited, and the jury instructions incited an emotional reaction from the jury. In response, Plaintiff argues that the Jury was entitled to find some essential functions were not necessary for the accommodation period; the Jury was instructed that not all of MLGW proscribed functions were 'essential'; and the jury could make commonsense inferences because job functions are a questions of fact.

Contrary to MLGW's assertions, the jury instructions did not mislead, confuse, or elicit a purely emotional response from the Jury. MLGW failed to identify any specific deficiencies in the jury instructions. In fact, the only claim made by MLGW is that its proposed verdict form

"walked the jury through the complex analysis required to properly evaluate a claim under the ADA." (ECF No. 99 at 17). Without more, this argument fails to demonstrate that the verdict form induced a "seriously erroneous result."

MLGW also claims its proof was unduly limited because they were unable to present evidence of the lack of financial hardship imposed on Plaintiff by the accommodation. Lack of financial hardship is not a determinative factor in assessing the reasonableness of an accommodation. Even if such evidence was presented, the jury could have reached the same verdict. The fact that the jury was unaware of the accommodations 'limited' financial impact on Plaintiff, does not lead to the conclusion that the jury reached an erroneous result. Therefore, MLGW's Motion for New Trial is **DENIED**.

### C. Plaintiff's Motion for Award of Equitable Relief

Title I of the Americans with Disabilities Act ("ADA") incorporates the procedures and remedies available under Title VII, including 42 U.S.C. § 2000e-5(g). *See* 42 U.S.C. § 12117(a). "In the absence of exceptional circumstances, backpay should always be awarded when a Title VII violation is found." *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983) (citing 42 U.S.C. § 2000e-5(g)). "Neither the arguable good faith of the defendant employer nor the difficulty in calculating the back award constitute exceptional circumstances." *Id*. Here, Plaintiff contends that she was forced to deplete her accrued sick leave as a result of MLGW's discriminatory actions. Plaintiff states that from January 2, 2013, through February 4, 2013, she used 181 hours of sick time that she had previously accrued. After her sick leave bank was depleted, Plaintiff applied for and used short term disability benefits, which provided her with 60% of her regular pay. As such, Plaintiff asserts that between February 4, 2013, and March 28, 2013, she lost 40 percent of her full pay for approximately 299 hours.

In response, MLGW argues that (1) Plaintiff cannot recover backpay for the period of time during which she was legally forbidden from performing the functions of her job; (2) to the extent Plaintiff is entitled to recoup vacation and/or sick days, the proper remedy is for these days to be credited back to Plaintiff, rather than Plaintiff receiving cash compensation; (3) Plaintiff's requested damages should be reduced or denied because Plaintiff failed to mitigate her damages; (4) this court should not apply the collateral source rule, and (5) Plaintiff is not entitled to prejudgment interest on her emotional distress damages.

### 1. Administrative Suspension of Law License

MLGW contends that it is undisputed that Plaintiff's law license was suspended on February 26, 2013, and that it remained suspended for the remainder of her disability.  As a result, Plaintiff should only be able to recover backpay for the period of February 4, 2013 through February 25, 2013, 16 work days.  To support this position, MLGW argues pursuant to the Rules of the Tennessee Supreme Court, no person shall engage in the practice of law or the law business in Tennessee, except pursuant to the authority of this Court, unless he or she has been admitted to the bar of the Supreme Court and issued a license by the Supreme Court.  *See* Tenn. Sup. Ct. R. 7, Art. I, § 1.01.[9]

Plaintiff asserts that it is undisputed that neither party was aware that Plaintiff's law license was suspended during this time frame.  Thus, had MLGW not discriminated against her, she would have worked during the relevant time frame and would have received her full pay, which is exactly what happened when she returned to work for a brief period of time in April

---

[9] The licensure requirement is also embodied in the Tennessee Code Annotated, which provides that "[n]o person shall engage in the practice of law or do law business … unless the person has been duly licensed and while the person's license is in fully force and effect…."  Tenn. Code Ann. § 23-3-103.

2013.[10]  Furthermore, Plaintiff argues that whether Plaintiff would have been in violation of any Tennessee state ethical rules or otherwise is a side issue not for this Court to decide and would not have caused Plaintiff to lose any of her pay during the time period in question.

The Court finds that Plaintiff's administrative suspension of her law license does not affect her entitlement to backpay.

### 2.  *Recouping or Crediting of Vacation/ Sick Days vs. Cash Compensation*

The purpose of backpay is to "place [the plaintiff] in the position [she] would have been in but for discrimination." *Rasimas*, 714 F.2d at 626.  A prevailing plaintiff is entitled to receive the "benefits the claimant would have received but for discrimination…." *Id*.  MLGW states that to the extent this Court concludes that Plaintiff is entitled to recover for leave that was either expended or not accrued, it should simply order that Plaintiff be made whole by having the leave credited to her leave bank.  Plaintiff argues that an award of monetary compensation for sick/vacation days is simply the functional equivalent to crediting the days back to Plaintiff's leave bank.

In order to place Plaintiff in the position she would have been had the discrimination not occurred, the Court finds that reinstatement of Plaintiff's lost leave benefits is the appropriate remedy.

### 3.  *Mitigating Damages*

The duty to mitigate damages after discrimination has occurred is statutorily imposed by Section 706(g) of Title VII.  *Rasimas*, 714 F.2d at 623 (citing 42 U.S.C. § 2000e-5(g)).  As such, MLGW argues that Plaintiff was required to mitigate her damages following the alleged discrimination.  MLGW states that at the time Plaintiff's disability began and throughout her

---

[10] Plaintiff also argues that the evidence at trial established that MLGW was responsible, partially if not completely, for the administrative suspension of Plaintiff's law license.

disability period, Plaintiff had 19 days of accrued vacation. Had Plaintiff used her vacation time, she would have mitigated her damages.

Plaintiff argues that MLGW fails to cite any authority that suggests that Plaintiff should have depleted her accrued vacation days as a result of MLGW's discriminatory actions. Plaintiff further states that if Plaintiff would have used her vacation days while on short term disability, she would have been deprived of the later use of these days for vacation, as the benefit was intended.

The Court finds that Plaintiff failed to mitigate her damages. The duty to mitigate damages "operates to prevent claimants from recovering for damages which they could have avoided through reasonable diligence." *Id.* (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, (1982). Plaintiff had 19 days of vacation that she could have used prior to receiving short term disability to mitigate her damages.

### 4. Collateral Source Rule

"The mere fact '[t]hat a benefit comes from the defendant … does not itself preclude the possibility that it is from a collateral source.'" *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 389 (4th Cir. 2010). The collateral source rule provides that compensation from an independent source should not be deducted from the award of damages. *Rawlins Constr., Inc. v. Downes*, Nos. 99-5265/99-5314, 2000 U.S. App. LEXIS 16204, at *4 (6th Cir. July 7, 2000) (citing *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994)). In *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 435 (6th Cir. 1999), the Sixth Circuit utilized the following five factor test articulated by the Fifth Circuit in *Phillips v. Western Company of North America*, 953 F.2d 923, 932 (5th Cir. 1992) to determine whether pension benefits were collateral:

(1) whether the employee makes any contribution to funding of the disability payment; (2) whether the benefit plan arises as the result of a collective

> bargaining agreement; (3) whether the plan and payments thereunder cover both work-related and nonwork-related injuries; (4) whether payments from the plan are contingent upon length of service of the employee; and (5) whether the plan contains any specific language contemplating a set-off of benefits received under the plan against a judgment received in a tort action.

*Hamlin*, 165 F.3d at 435.  The defendant has the burden of showing that backpay should be reduced or limited.  *Rasimas*, 714 F.2d at 623.

In *Hylind v. Xerox Corp.*, 31 F. Supp. 3d 729 (D. Md. 2014), the district court determined to what extent should have payments to the employee under its disability plan been set off against her backpay award in a sexual discrimination case.  The evidence revealed that the defendant employer contributed some portion of the premium.  After applying the same factors used by the Sixth Circuit in *Hamlin*, the *Hylind* Court found: (1) the plan was not a result of collective bargaining activity; (2) the plan covered both non-job and job related disability; (3) the disability benefits were tied to income, not length of service; (4) there was no specific language in a tort action for which the employer might have become liable; and (5) the disability benefits previously offset from the employee's back pay award derived from a collateral source and should not have been set off against her back pay award.

MLGW argues that the facts of this case do not support application of the collateral source rule because it pays 75% of the premium payments for the short-term disability coverage as a benefit to its employees.  Additionally, MLGW contends that if Plaintiff is awarded her full salary for the period of time she received short-term disability benefits, she would be receiving a windfall by receiving more pay than she would have received had MLGW granted Plaintiff's accommodation.  The purpose of the collateral source rule is to ensure that tortfeasors bear the costs of their own conduct while "prevent[ing] tortfeasors from paying twice for the same

injury—a result that would achieve both overdeterrence and overcompensation." *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 n. 21 (5th Cir. 1994).

MLGW has not sufficiently carried its burden. With the exception of MLGW stating that it pays 75% of the premium payments for the short-term disability coverage, and the fact that Plaintiff received disability coverage for a non-work related injury, MLGW only makes a policy argument as to why the collateral source rule is inapplicable in this case. As a result, the Court finds that MLGW's argument is insufficient to overcome its burden of showing that backpay should be reduced or limited.

### 5. *Prejudgment interest*

Plaintiff seeks prejudgment interest on her economic damages from January 2, 2013, through March 28, 2013, and prejudgment interest on her emotional distress claim from September 1, 2015, the date the jury's verdict was entered until the date the final, appealable judgment is entered. MLGW does not dispute that Plaintiff is entitled to prejudgment interest on her economic damages. Rather, MLGW contends that Plaintiff has never argued that the entirety of her emotional damages occurred on a given date, nor was the amount of damages to be awarded certain or subject to calculation.

The United States Supreme Court has established that "Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers." *Loeffler v. Frank*, 486 U.S. 549, 557-58 (1988). "Prejudgment interest is appropriate if needed to make a plaintiff whole." *Lentz v. City of Cleveland*, 333 Fed. App'x 42, 51 (6th Cir. 2009). "Prejudgment interest should apply to all past injuries, including past emotional injuries. Courts should award prejudgment interest whenever a certain sum is involved. Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole." *Thomas v. Tex.*

*Dep't of Crim. Justice*, 297 F.3d 361, 372 (5th Cir. 2002) (citing *United States v. Batson*, 782 F.2d 1307, 1316 (5th Cir. 1986)).  "Non-economic damages awarded for a plaintiff's pain and suffering are 'just as much an "actual loss" (for which prejudgment interest is in order)' as purely economic damages.  *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013).  Accordingly, the Court finds that Plaintiff is entitled to prejudgment interest on her emotional distress damages from September 1, 2015, the date the jury's verdict was entered until the date the final, appealable judgment is entered.

### 6. *Calculations*

MLGW is ordered to pay Plaintiff $92.000.00 in damages as awarded by the Jury in this case.  MLGW is furthered ordered to pay Plaintiff $1,449.32 in prejudgment interest on the damages award.[11]  Plaintiff seeks a total award of $26,611.20 in backpay.  (ECF No. 100 at 2).  However, MLGW is ordered to pay Plaintiff $18,184.32 in backpay.  This amount has been reduced by 19 days of work due to Plaintiff's failure to mitigate her damages.  MLGW is ordered to pay Plaintiff $590.37 in prejudgment interest on the backpay award.[12]

Plaintiff's request for postjudgment interest on her damages is also **GRANTED**.

## CONCLUSION

The Court has fully reviewed the entire record, including motions, responses, and the objections. The Court finds the Defendant's Motion for Judgment as a Matter of Law and Motion for a New Trial are **DENIED**, and Plaintiff's Motion for Award of Equitable Relief is **GRANTED**.

---

[11] The Court utilized the relevant interest rate as of March 17, 2017.

[12] The date through which pre-judgment interest is awarded, and post-judgment interest begins, is left to the sound discretion of the Court.  *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 843 (6th Cir. 1994).  Here, the Court utilized the filing date of Plaintiff's initial Complaint.

**IT IS SO ORDERED** this 29th day of March, 2017.


_s/John T. Fowlkes, Jr._____
JOHN T. FOWLKES, JR.
United States District Judge